# 42 U.S.C. §1983

# COMPLAINT

## Docket #

William Petaway
* plaintiff *

FILED
2011 MAR 17 P 3:39
U.S. DISTRICT COURT
NEW HAVEN, CT

## VS.

* Defendants *

CONN. DOC Interstate compact Super—
visor Lynn milling.

CONN. DOC commissioner Theresa Lantz.

CONN. DOC Director mary marcial.

CONN. DOC contract Administrator
Joel Ide.

Each Defendant named above is being

sued in their "Individual capacity"

in this civil suit. The plaintiff seeks

a trial by Jury, as is his right.

# * PAGE TWO *

## * Case Description *

This is a 42 U.S.C. § 1983 action by a conn. doc inmate who was involuntarily Transfered to R.I. DOC. R.I. DOC does "mandatory" Hiv tests pursuant to its state law on conn. DOC inmates. conn. state law (prohibits) Hiv tests without the "consent" of the person tested. The R.I. mandatory Hiv tests violate: conn. DOC Adm. Directive, conn. state law, The Interstate Compact and the 4th and 14th Amendments of the United states Constitution.

## * Jurisdiction and Venue *

(1) Federal district courts have Jurisdiction to hear 42 U.S.C. § 1983 claims under 28 U.S.C. § 1343 (a) 3-4.

(2) This court has venue under 28 U.S.C. § 1391 (b).

(3) All defendants work and reside in the state of connecticut to the knowledge of the plaintiff.

# * PAGE THREE *

## * The parties *

(4) Plaintiff William Petaway is a CONN. DOC inmate sent involuntarily, and without notice, to R.I. DOC on 10/1/08.

(5) Defendant Lynn Milling is the CONN. DOC Interstate Compact Supervisor.

(6) Defendant Theresa Lantz is the CONN. DOC Commissioner.

(7) Defendant Mary Marcial is the CONN. DOC Director.

(8) Defendant Joel Ide is the CONN. DOC Contract Administrator.

(9) At all times in this lawsuit the above Defendants were "acting under color of state law", when the state law, Federal law and constitutional violations happened. All are liable under civil rights Act 42 U.S.C. § 1983.

Pratt vs. Taylor 451 U.S. at 535—536 (1981).

# ✳ PAGE FOUR ✳

## ✳ The FACTS ✳

(10) William Petaway is a state of CONN. resident, sentenced in connecticut.

(11) On 10/1/08 I was (involuntarily) transfered from CONN.DOC Northern C.I. to R.I.DOC Intake Services Center.

✳(12) On 10/1/08 the transfer to R.I.DOC was pursuant to the New England Interstate compact and CONN. state law.

(13) On 10/1/08 the transfer to R.I.DOC by CONN.DOC officials was done with NO prior (Notice) or warning to me.

(14) ALL my "personal property" I had at Northern C.I. property record — inventory was Kept in CONN.DOC on 10/1/08, and (only I) was transfered by two CONN. correctional Officers.

(15) Once in R.I.DOC Intake Services center a medical intake exam was done by medical staff. I do (not) Know their names, but they were THREE females.

# ☀ PAGE FIVE ☀

**☀ (16)** On 10|1|08 I was told, pursuant to R.I. General Law § 42-56-37(a), I had to submit to a "mandatory" Hiv test by Intake medical Nurse(s).

**☀ (17)** I (notified) the Intake medical Nurses that CONN. state law (prohibits) the "mandatory" Hiv testing unless the patient—inmate consents to it.

**☀ (18)** CONN. DOC Adm. Directive 8.11, section 8(a) prohibits Hiv tests unless the inmate gives (written) consent.

**☀ (19)** CONN. Gen. Stat. § 19a-582(a) is CONN. (state law) and prohibits Hiv tests unless the person CONSENT !!

**(20)** CONN. DOC Adm. Directive 8.11, section 8(a), and CONN. Gen. Stat. section 19a-582(a) are legal "rights" of mine to refuse Hiv tests.

**☀ (21)** The New England Interstate Compact Article IV(e) states: I shall (not) be deprived of (any) "rights" I would have If in a CONN. DOC prison. THATS "FEDERAL LAW."

# ✳ PAGE SIX ✳

✳ (22) I (notified) the Intake medical Nurses that I have a CONN. state Law "right" to refuse Hiv testing.

✳ (23) I was told by Intake medical staff that my CONN. "rights" do (NOT) apply in R.I. DOC. Then a tall c/o forced me in a chair, and a medical Nurse took my blood, with a needle, for the mandatory Hiv testing.

(24) Another Intake Nurse stuck some—thing in my mouth, then took the sticks and put them in her purse or bag she was holding. Name unknown.

✳ (25) I did (not) give my (written) or verbal CONSENT for R.I. DOC Nurses to take blood, or to use it for the "mandatory" Hiv test.

(26) AFTER I was very very Angry, in shock, embarrassed, confused and in PAIN from the needle etc. done (without) my CONSENT !!

(27) I was escorted out of the Intake medical area and put in the

# ✳ PAGE SEVEN ✳

Segregation Unit on 10/1/08.

✳ (28) In segregation I had a headache, a bad one causing PAIN. I was now suffering mental and emotional distress in the new alien environment.

(29) On 10/2/08 I was placed in General Population at Intake Services Center and begin my stay in R.I. DOC.

✳ (30) Besides on 10/1/08 I've had OTHER HIV and other strange tests done on me while in R.I. DOC through 4-2010.

(31) R.I. DOC Director A.T. Wall believes the (mandatory) HIV tests done on CONN. DOC inmates are authorized.

(32) R.I. DOC Medical Program Director DR. Michael Fine believes the (mandatory) HIV tests done on CONN. DOC inmates authorized.

(33) R.I. DOC Nursing Services Director RN Gordon Bouchard believes the (mandatory) HIV tests done on CONN. DOC inmates authorized.

# ✳ PAGE EIGHT ✳

(34) I have filed medical complaints with the R.I. DOC officials in charge about the mandatory HIV tests on me. SEE The THREE R.I. DOC Exhibits.

(35) I have filed a CONN. DOC Grievance with CONN. DOC Interstate Compact about the R.I. DOC (mandatory) HIV tests on me, and ASKED to be transfered out of R.I. DOC ASAP. The Grievance sent to CONN. DOC early JANUARY 2011.

✳(36) my mother, Debra Petaway — Jones has CALLED Defendant Lynn Milling to ASK her to move me out of R.I. DOC spoke to her about the HIV tests etc.

✳(37) my Aunt, Inez Petaway — Jaynes has CALLED Defendant Lynn Milling over (5) five times without contact, to ASK her to move me back to CONN. DOC etc.

✳(38) The R.I. (mandatory) HIV tests on a CONN. inmate violates the Interstate Compact Article IV (e), because of my "rights" in CONN. Gen. Stat. section 19a — 582 (a) et. seq.

# ✳ PAGE NINE ✳

## ✳ ALL Defendants KNEW of ✳
## R.I. State Law § 42-56-37(a).

**(39) A.** Defendants Lantz, marcial and milling are the (Board) of Interstate Corrections Compact as stated in the 2008 CONN. State Register and manual page 239. SEE: CONN. Gen. Stat. § 18-104. They are who (Transfered) me to R.I. DOC.

**(39) B.** Defendant Ide made or entered the CONTRACT with R.I. DOC, its on file.

**(39) C.** ALL Defendants, milling, Lantz, marcial and especially Ide had a (Duty) NOT to enter a CONTRACT with R.I. DOC (until) they ensured NO "legal rights" of CONN. inmates would be violated in Violation of Interstate Compact Article IV(e).

**(39) D.** R.I. DOC officials have stated, and will state that CONN. DOC was AWARE of the (mandatory) Hiv testing of R.I. DOC.

**(39) E.** So by the CONTRACT and Transfer to R.I. DOC CONN. DOC Intentionally violated my state and federal rights, or had Deliberate Indifference to my "rights."

※ PAGE TEN ※

## ※ 42 U.S.C. §1983 Liability ※

(40) All the Defendants are "liable" under 42 U.S.C. §1983, because while acting under color of state law, they ALL violated:

(A) CONN. DOC Adm. Directive. 8.11, section 8(a). mandatory DOC policy.

※ (B) CONN. Gen. Stat. section 19a—582 (a).

※ (C) The 4th and 14th Amendments of the United States constitution.

※ (D) The New England Interstate compact Article IV (e). NOTE:

SEE: Cuyler vs. Adams 449 U.S. at 440 (1981).

Holding Interstate Agreements or compacts, once approved by the Congress, constitute "FEDERAL LAW" enforceable under 42 U.S.C. § 1983.

The above (violated) by the (mandatory) Hiv tests done on william Petaway. CLEAR violations in this CASE.

* PAGE ELEVEN *

* Relief Requested *

(41) The Plaintiff asks the court to grant him the following :

(A) $5,000 Nominal Damages from ALL Def-endants (seperately) in their Individual capacities. NOTE:
Plaintiff need (not) establish physical injury in order to recover nominal and punitive Damages for mental-emotional injury.
SEE: memphis vs. Stachura 477 U.S. at 308 n.11 (1986).

* (B) $10,000 Compensatory Damages from ALL Defendants (seperately) in their Individual capacities. NOTE:
medical testing done without (consent) is an:" Assault."
SEE: Cruzan vs. Director of mo. Dept. of Health 497 U.S. at 2846 — 2847 (1990).

(C) $20,000 Punitive Damages from ALL Defendants (seperately) in their Individual capacities. NOTE:
Plaintiff should get punitive Damages when a "reckless or callous disre-gard" for the plaintiff's (rights) and

# ✳ PAGE TWELVE ✳

"Intentional violation of FEDERAL LAW."
SEE: Smith vs. Wade 461 U.S. at 51
(1983).

(D) costs, such as the Lawsuit "filing fee", litigation costs for "copies" etc.

(E) And any other relief this court believes or feels I'm entitled.

PRO SE plaintiff,

1/24/11   By: William O. Petaway

William O. Petaway

CONN. DOC inmate

R±. DOC
High Security
P.O. BOX 8200
Cranston, R±. 02920

✳ Attached Exhibits ✳

R±. DOC Director A.T. Wall letter 12/6/10.
R±. DOC Doctor M. Fine letter 12/28/10.
R±. DOC Nurse G. Bouchard letter 12/2/10.
CONN. Gen. Stat. § 19a—582 (a).
CONN. DOC Adm. Dir. 8.11, section 8 (a).

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS



**Department of Corrections**

Ashbel T. Wall, II, Director
40 Howard Avenue
Cranston, RI 02920

December 6, 2010

Tel:  (401) 462-2611
Fax:  (401) 462-2630
TDD: (401) 462-5180

Mr. William Petaway, ID# 137369
P.O. Box 8200
High Security Center
Cranston, RI 02920

Dear Mr. Petaway:

    In response to your 12/01/10 letter regarding mandatory human immunodeficiency virus (HIV) testing, be advised that RIGL § 42-56-37 mandates that "(a) Every person who is committed to the adult correctional institutions to answer for any criminal offense, after conviction, is required to be tested for human immunodeficiency virus (HIV). No consent for this is required from the person being tested, no is this test subject to waiver."

    While you maintain that RIGL § 13-11-2 should protect or exempt you from such testing because, according to you, Connecticut (your sending state) does not require such testing, RIGL § 13-11-2 states, in part, "(c) All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with any similar inmates of the receiving state that may be confined in the same institution."  Consequently, you are subject to Rhode Island's statutorily required HIV testing.

    I consider this matter closed.

Sincerely,

*A. T. Wall*

Ashbel T. Wall, II
Director

cc:   D. McCauley
      J. Weeden
      Capt. Adams
      P. Coyne-Fague
      Dr. Fine
      J. Marocco
      File

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

 **Department of Corrections**

MICHAEL FINE, MD
*Medical Program Director*
*Healthcare Services*
*39 Howard Avenue*
*Cranston, RI 02920*

December 28, 2010

Mr. Petaway:

I received you letter of December 20, 2010.

As Director Wall informed you, The HIV testing is part of Rhode Island Law. I also consider this matter closed, and will not engage in further correspondence about it.

Sincerely,

Michael Fine, MD
Medical Program Director

# STATE OF RHODE ISLAND
## DEPARTMENT OF CORRECTIONS
### INTEROFFICE MEMORANDUM

**TO:**      WILLIAM PETAWAY (#137369)

             HIGH SECURITY

**FROM:**    GORDON R. BOUCHARD, RN

             DIRECTOR OF NURSING SERVICES

**SUBJECT:** LETTER OF COMPLAINT

**DATE:**    12/2/10

**CC:**      M. FINE, J. MAROCCO

---

I am in possession of your letter of complaint dated 12/1/10 addressed to "HSC Nurse", in response I can offer the following:

The obtaining of an HIV test for all "sentenced" inmates at the Rhode Island Department of Corrections is state law.

Connecticut Department of Corrections policies do not apply to the Rhode Island Department of Corrections.

If you have any further issues please do not hesitate to contact me.

Conn. Gen. Stat. § 19a-582

 **LexisNexis®**

3 of 5 DOCUMENTS

LEXISNEXIS (TM) CONNECTICUT ANNOTATED STATUTES

*** THIS DOCUMENT IS CURRENT THROUGH THE 2009 LEGISLATION (2010 SUPPLEMENT) ***
*** ANNOTATIONS CURRENT THROUGH NOVEMBER 30, 2010 ***

TITLE 19a PUBLIC HEALTH AND WELL-BEING
CHAPTER 368x AIDS TESTING AND MEDICAL INFORMATION

**GO TO CONNECTICUT STATUTES ARCHIVE DIRECTORY**

Conn. Gen. Stat. § 19a-582   (2010)

**Sec. 19a-582. General consent required for HIV-related testing. Counseling requirements. Exceptions.**

(a) Except as required pursuant to section 19a-586, a person who has provided general consent as described in this section for the performance of medical procedures and tests is not required to also sign or be presented with a specific informed consent form relating to medical procedures or tests to determine human immunodeficiency virus infection or antibodies to human immunodeficiency virus. General consent shall include instruction to the patient that: (1) As part of the medical procedures or tests, the patient may be tested for human immunodeficiency virus, and (2) such testing is voluntary and that the patient can choose not to be tested for human immunodeficiency virus or antibodies to human immunodeficiency virus. General consent that includes HIV-related testing shall be obtained without undue inducement or any element of compulsion, fraud, deceit, duress or other form of constraint or coercion. If a patient declines an HIV-related test, such decision by the patient shall be documented in the medical record. The consent of a parent or guardian shall not be a prerequisite to testing of a minor. The laboratory shall report the test result to the person who orders the performance of the test.

(b) A person ordering the performance of an HIV-related test shall not be held liable for ordering a test without specific informed consent if a good faith effort is made to convey the instruction required pursuant to subsection (a) of this section.

(c) At the time of communicating the test result to the subject of the test, a person ordering the performance of an HIV-related test shall provide the subject of the test or the person authorized to consent to health care for the subject with counseling or referrals for counseling, as needed: (1) For coping with the emotional consequences of learning the result; (2) regarding the discrimination problems that disclosure of the result could cause; (3) for behavior change to prevent transmission or contraction of HIV infection; (4) to inform such person of available medical treatments and medical services; (5) regarding local or community-based HIV/AIDS support services agencies; (6) to work towards the goal of involving a minor's parents or legal guardian in the decision to seek and in the ongoing provision of medical treatment; and (7) regarding the need of the test subject to notify his partners and, as appropriate, provide assistance or referrals for assistance in notifying partners; except that if the subject of the test is a minor who was tested without the consent of his parents or guardian, such counseling shall be provided to such minor at the time of communicating such test result to such minor. A health care provider or health facility shall not withhold test results from the protected individual. The protected individual may refuse to receive his test result but the person ordering the performance of the test shall encourage him to receive the result and to adopt behavior changes that will allow him to protect himself and others from infection.

(d) The provisions of this section shall not apply to the performance of an HIV-related test:

(1) By licensed medical personnel when the subject is unable to grant or withhold consent and no other person is available who is authorized to consent to health care for the individual and the test results are needed for diagnostic

| Directive Number 8.11 | Effective Date 9/15/2008 | Page 4 of 10 |
|---|---|---|

| Title |
|---|
| Human Immunodeficiency Virus Infection/Acquired Immune Deficiency Syndrome |

7.   **Inmate Education.**

   A.   <u>Each inmate upon entry into a correctional facility shall be offered written information concerning HIV infection counseling and testing protocols within the Department. Each inmate shall be required to sign a receipt for such information and the receipt shall be filed in the inmate's health record.</u>

   B.   As part of the routine orientation process, each inmate shall be given the opportunity to receive information concerning HIV/AIDS and to ask related questions.

   C.   Health orientation sessions, including HIV/AIDS related information, shall be offered as frequently as necessary, but no less than three times a week at intake facilities and once a week at all other facilities.

   D.   Voluntary inmate attendance at weekly education sessions may be authorized upon request by an inmate and based upon the facility schedule.

   E.   Materials and curricula for health education shall be approved by the Director of Health and Addiction Services or designee prior to use.

   F.   Reasonable accommodations and provisions shall be made for each inmate regardless of literacy, language barrier, or disability.

   G.   Inmate health education shall include efforts designed to enhance understanding of HIV/AIDS in order to reduce fear, prejudice and discrimination against HIV infected individuals.

   H.   HIV discharge packets, which includes AIDS related information and available community resources, shall be made available to each inmate reentering the community, participating in a furlough, and/or participating in a family visiting program in accordance with Section 19 of this Directive.

8.   **Test Consent, Counseling and Referral.**

   A.   <u>Consent.</u> Unless otherwise stated in accordance with Section 9 of this Directive, <u>HIV testing shall be performed with the informed consent of the inmate tested. Informed consent shall be obtained without undue inducement, compulsion, fraud, deceit, duress, or other forms of constraint or coercion.</u> HIV testing shall consist of an explanation of the test, an acknowledgment that consent to an HIV test is not precondition to receiving healthcare, implications for medical treatment, the medical impact of refusing the test, an explanation of procedures to be followed, and the confidentiality of test results including an acknowledgment that known partners of the inmate tested may be warned of their potential risk of infection without identifying the protected individual and that the law permits the recording of HIV and AIDS related information in medical charts and records. <u>Written consent for HIV testing shall be obtained by completing Attachment A, Informed Consent HIV Antibody Test, which must be signed by both the inmate and the HIV Counselor providing the counseling, and filed in the inmate's health record. After informed consent is obtained, antibody testing shall be conducted using a buccal swab rapid results testing</u> method in a location where confidentiality shall be guaranteed.

   B.   <u>Counseling.</u> HIV testing shall be accompanied by pre- and post-test counseling. Designated health services staff members shall administer pre- and post-test counseling consistent with the

CONN. DOC Policy.